UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DENVER CROTWELL AND SHARON CROTWELL** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 06-909-RET-DLD** |
| **WAL-MART LOUISIANA, LLC, ET AL** | |

### MAGISTRATE JUDGE'S REPORT

Before the court are two motions filed by the defendant, Trimas Corporation d/b/a Crequent Towing Partners - a motion for summary judgment (rec. doc. 20) and motion to strike documents reflecting opinions of Dr. Thomas C. Shelton (rec. doc. 31). The motion to strike seeks to exclude documents reflecting the opinions of Dr. Shelton, which are used by the plaintiffs to support their claim in their memorandum in opposition to defendant's motion for summary judgment. Thus, the motion for summary judgment and motion to strike will be considered together. Both of defendant's motions are opposed.

### Background

On or about October 29, 2005, defendant-Jose Yanez (Yanez) was driving his truck northbound on Louisiana Highway 1026 in Livingston Parish (rec. doc. 1). Yanez was towing a trailer behind his truck that was attached by a Crequent Reese Towpower model no. 21793 Class III ball mount (rec. doc. 20). While driving, the ball mount broke in half, and the trailer broke away from the Yanez vehicle and entered the southbound lane of La. Highway 1026 where plaintiffs were driving. The trailer struck plaintiffs' vehicle head-on, which resulted in severe injuries to Denver Crotwell.

The ball mount at issue in this case was manufactured by a division of defendant-Trimas Corporation (Trimas).[1]  It was purchased new on April 2, 2004, by Yanez from defendant-Wal-Mart Store No. 1266[2] and installed on the truck on the same day. Id.  Prior to the accident, the ball mount and trailer were used an average of three times per week with no problems (rec. doc. 20 and 26).  The stated maximum load for the ball mount is 5,000 pounds. Id. On the date of the accident, Yanez was traveling to work, and the trailer was carrying scaffolding, cement bags, sand, wheelbarrows, and 4 boards (rec. doc. 26). At the time of the accident, Yanez was using both standard safety chains that came with the trailer to attach the trailer to his truck (rec. doc. 27).  The safety chains failed when the ball mount broke in two; therefore, Yanez was issued a citation by Louisiana State Trooper Jason Shavers in connection with the accident for failing to comply with his statutory duty to attach safety chains to the tow vehicle of sufficient strength to hold the trailer to the tow vehicle (rec. doc. 20).

Plaintiffs originally filed suit for damages sustained in the accident in the 21st Judicial District Court, Parish of Livingston, State of Louisiana.  The matter was removed to this court on November 20, 2006, based on diversity jurisdiction (rec. doc. 1).  Plaintiffs' claims arise under the Louisiana Products Liability Act (LPLA), La. R.S. 9 2800.51, *et. seq.,* which imposes liability on a manufacturer of a product if a characteristic of the product renders the product unreasonably dangerous when damages arise from a reasonably anticipated use of the product.  Trimas moved for summary judgment on plaintiffs' LPLA claims and

---

[1] For purposes of this motion, it is uncontested that Trimas is the manufacturer of the ball mount at issue (rec. doc. 20-3, p. 2).

[2] Both Wal-Mart and Yanez have been dismissed from this matter (rec. doc. 4 and 15).  The only remaining party is the ball mount manufacturer, Trimas Corporation.

moved to strike plaintiffs' expert report in support of its theory of liability. The deadline for discovery, other than experts, was March 1, 2008, and discovery regarding experts was June 1, 2008 (rec. docs. 9 and 17). Defendant's motions are before the court for report and recommendation.

### Arguments of the Parties

Defendant's motion for summary judgment challenges plaintiffs' ability to prove their claims under LPLA. Defendant argues that the damages in this case did not arise out of a "reasonably anticipated use of the product." Yanez was issued a citation for a violation of a statute requiring a towing vehicle to use safety chains of sufficient strength to hold the trailer to the truck. Defendant contends that the statutory violation equates to a determination that the "the towing equipment, including the ball mount, was not in a 'reasonably anticipated use' at the time of the accident" (rec. doc. 20-3).

Additionally, defendant argues that plaintiffs are unable to prove that the ball mount was defective in design, construction, or contained an inadequate warning. Defendant contends that plaintiffs' expert report and affidavit offered to support their claims are inadmissible. Defendant moves to strike the opinions of Dr. Shelton as unreliable under Fed. R. Civ. P. 702, and in support of its motion to strike, offers an affidavit of one of its experts, Dr. Lee A. Swanger, who concludes that Dr. Shelton's opinions are based on unreliable methodology. Defendant argues that plaintiffs' expert cannot identify the precise cause of the ball mount's failure; and that because the ball mount at issue would have passed the generally accepted industry standard for Class III ball mounts, it is not defective in design or construction.

Plaintiffs respond that Yanez's use of the ball mount at issue was in a manner reasonably anticipated at the time of the accident. There is no evidence that the ball mount was being used in an unconventional matter; the ball mount was properly mounted and connected to the trailer; Yanez had two safety chains attached to the trailer as required by law; there is no evidence that the trailer was overloaded[3]; and there is no evidence that a modification was made to the ball mount after it was purchased. The safety chains used were part of the trailer that the Yanez family bought in April 2004. Plaintiffs suggest that no ordinary person could anticipate or foresee that the safety chains that were provided would not hold during a ball mount failure. Plaintiffs contend that the fact that a citation was issued to Yanez does not alleviate Trimas' responsibility for the accident. The failure of the safety chains occurred after the failure of the ball mount; thus plaintiffs argue that Yanez's failure to use safety chains of "sufficient strength" is not the sole cause of the accident, but rather an issue to be considered when apportioning fault.

Plaintiffs argue that the ball mount was defective in construction or composition and failed to contain an adequate warning. Plaintiffs note that expert testimony is not required to prove a claim under LPLA and that they intend to ask the court to apply *res ipsa loquitor* since a steel ball mount does not normally break in half when used in the reasonably anticipated manner of towing (rec. doc. 34). In light of the fact that defendant has offered

---

[3] Although there is no information in the record establishing the exact weight of the load on the trailer on the day of the accident, plaintiff offers testimony identifying the contents of the trailer (scaffolding, cement bags, sand, wheelbarrows, and 4 boards) and stating that the trailer was not overloaded. Additionally, plaintiffs' expert concluded that "the loads on the hitch bar consisting of the weight of the trailer and the reported load on the trailer at the time of the accident should not have caused the hitch bar to fail in a catastrophic and brittle manner." (rec. doc. 26-3). Defendant offers no testimonial or physical evidence that the trailer was overloaded. On a motion for summary judgment, the court must view the facts in a light most favorable to the party opposing the motion (plaintiffs).

expert engineering testimony, plaintiffs retained Dr. Shelton to assist the trier of fact in understanding the evidence. Plaintiffs argue that Dr. Shelton's opinions are reliable, and that the SAE J684 standard relied on by defendant is not dispositive of whether the ball mount was defective in composition because it "does not establish or specify criteria for the composition, strength, or toughness of steel from which the ball mount was fabricated." Id. After testing, plaintiffs argue that the characteristics of the material used to make the ball mount deviate from other identical ball mounts made by the same manufacturer. Plaintiffs object to defendant's use of the self-serving testimony of its expert, Dr. Swanger, to support its position that Dr. Shelton's opinions are not reliable, and suggest that the differing opinions offered by the two experts are issues of credibility to be presented to the trier of fact, and not appropriate for a motion for summary judgment or motion to strike.

### **Summary Judgment Standard**

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law. Federal Rule of Civil Procedure 56. When a motion for summary judgment is properly made and supported under Rule 56(c), the opposing party may not rest on the mere allegations of its pleadings, but rather must come forward with "specific facts" showing that there is a genuine issue for trial. *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(e). The non-movant's evidence is to be believed for purposes of the motion and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). However, summary judgment must be entered against the plaintiffs herein, on a properly supported defense motion, if they fail to

make an evidentiary showing in their opposition to the motion sufficient to establish the existence of an element essential to her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).

### **Substantive Law**

The Louisiana Products Liability Act (LPLA) provides the exclusive remedy for recovery against manufacturers of allegedly defective products. La. R.S. 9:2800.52; *Touro Infirmary v. Sizeler Architects*, 947 So.2d 740 (La. App. 4th Cir. 2006). Pursuant to LPLA, in order to establish manufacturer's liability, a claimant must show (1) that defendant is a manufacturer of the product, (2) that claimant's damage was proximately caused by a characteristic of the product, (3) that this characteristic made the product "unreasonably dangerous," and (4) that claimant's damage arose from a reasonably anticipated use of the product by claimant or someone else. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254 (5th Cir. 2002); La. R.S. 9:2800.54. In order for a product to be "unreasonably dangerous," it must either: (a) be defective in construction, (b) be defective in design, (c) have an inadequate warning, or (d) fail to conform to an express warranty. Id.

Plaintiffs' complaint alleges that the ball mount was unreasonably dangerous in construction or composition, in its design, and by failing to contain an adequate warning (rec. doc. 1, pp. 9-11). In order for plaintiffs to prove defective construction or composition, they must prove that, at the time the product left its manufacturer's control, it deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufacturer by the same manufacturer. La. R.S. 9:2800.55. A defective design claim requires plaintiffs to prove both that the likelihood that the product's design would cause the plaintiff's damage and that the gravity of the

damage outweighed the burden on the manufacturer of adopting an alternative design and the adverse effect of the alterative design on the utility of the product. La.R.S. 9:2800.56; *Thompson v. Nissan North America, Inc.*, 429 F.Supp.2d 759 (E.D. La. 2006), *aff'd* 230 Fed. Appx. 443 (5th Cir. 2007). Finally, to maintain a failure-to-warn claim, a plaintiff must demonstrate that "the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." La. R.S. 9:2800.57; *Stahl v. Novartis Pharmaceuticals Corp.,* 283 F.3d at 261.

### Discussion

For purposes of the motions before the court, it is uncontested that Trimas is the manufacturer of the ball mount at issue.[4] In order to sustain their burden of proof under LPLA, plaintiffs must prove that their damage was proximately caused by a characteristic of the ball mount, that the ball mount was defective in design, defective in composition, or contained an inadequate warning, and that plaintiffs' damages arose from a reasonably anticipated use of the ball mount by Yanez. The court first looks at whether Yanez was using the ball mount as reasonably anticipated, and then turns to whether the ball mount was unreasonably dangerous.

#### *Reasonably Anticipated Use*

Pursuant to the LPLA, a "reasonably anticipated use" means a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances. La. R.S. 9:2800.53(7). Trimas argues that plaintiffs are unable to prove that the ball mount was used as reasonably anticipated due to the fact

---

[4] (Rec. Doc. 20-3, p. 2).

that Yanez was cited for violating La. R.S. 32:384 in connection with the accident. Section 384 provides as follows:

> Every trailer and semitrailer with a loaded gross weight capacity of up to six thousand pounds shall be equipped with safety chains or other safety device approved in accordance with Subsection E. The safety chains or other approved safety device shall be securely attached to the towing vehicle when the trailer or semitrailer is in motion and shall be of sufficient strength to hold the trailer behind the towing vehicle in case the connection between the two vehicles detaches.

Plaintiffs offered evidence that Yanez used the two safety chains that were provided with the trailer he purchase in April 2004[5], that there is no evidence that the trailer was overloaded[6], that the ball mount was not being used in an unconventional manner, that there is no evidence that the ball mount was improperly mounted or connected to the trailer, and that there is no evidence of an alteration or modification to the ball mount after it was purchased (rec. doc. 26, Exhibits F and G, Depositions of Jose Yanez). Defendant contends, however, that the failure of the chains takes the use of the ball mount out of its "reasonably anticipated use." Defendant attempts to equate the failure of the chains with examples of improper use in the jurisprudence. The cases cited by defendant holding that a particular product was not used as "reasonably anticipated" involve an alteration or modification to the product or a misuse or abuse of the product, in some cases despite a specific warning cautioning against misuse (rec. doc. 20-3, pp. 11-12). Modification, misuse, or abuse of a product is not analogous to the *proper* use of safety chains that

---

[5] Defendant offered testimony of plaintiffs' expert that the remnant chain affixed to the Yanez trailer was corroded and worn and should have been replaced (rec. doc. 20-3, Exhibit 3, Deposition of Dr. Shelton).

[6] See ftnt 3.

-8-

nevertheless failed. Plaintiffs have presented sufficient evidence to create an issue of fact with regard to "reasonably anticipated use."

### *Unreasonably Dangerous*

Defendant's summary judgment challenges plaintiffs' ability to prove that the ball mount was unreasonably dangerous, i.e., that it was defective in design, defective in composition, or contained an inadequate warning. Plaintiffs' opposition to the motion for summary judgment only addresses the defective composition or construction of the ball mount and the failure to provide an adequate warning. Plaintiffs offer no evidence of a safer alternative design that was in existence at the time the ball mount left the manufacturer's control as required to prove a defective design claim. *Morgan v. Gaylord Container Corp.*, 30 F.3d 586 (5th Cir. 1994). Thus, it is recommended that summary judgment on the claim of defective design should be granted.

Both in the motion for summary judgment and motion to strike, defendant challenges the reliability and admissibility of Dr. Shelton's (plaintiffs' expert) opinions that the ball mount is defective in composition and construction. Defendant seeks to have the documents reflecting the opinions of Dr. Shelton stricken from the record. Before considering whether there is a basis for striking the opinions of Dr. Shelton, the court first considers whether, plaintiffs can meet their burden of proof without expert testimony by invoking the doctrine of *res ipsa loquitur*.

The Louisiana Supreme Court has held that the doctrine of *res ipsa loquitur* may be used to prove the manufacturer's negligence in an LPLA case. *Lawson v. Mitsubishi Motor Sales of America, Inc.*, 938 So.2d 35, 49 (La. 2006). Therefore, plaintiffs can use circumstantial evidence to make the inference that a product was unreasonably dangerous

when the product left the manufacturer's control. See *Lawson v. Mitsubishi Motor Sales of America, Inc.*, supra.  The circumstantial evidence presented "must exclude other reasonable hypotheses with a fair amount of certainty, [but] it is not necessary to negate all possible causes." *Williams v. Emerson Electrict Co.*, 909 F.Supp.395 (M.D. La. 1995), citing *State Farm Mutual Auto, Ins. Co. v. Wrap-On Co.,* 626 So.2d 874 (La. App. 3rd Cir. 1993).  The inference shifts the burden of proof to the defendant-manufacturer, such that the manufacturer must prove that the product was not defective when it left the manufacturer's control. *Lawson*, 938 So.2d at 49.  Thus, the law does not require plaintiffs to present expert testimony to identify a specific defect in the ball mount.

Plaintiffs present evidence that the ball mount failed even though the trailer was not overloaded[7], the ball mount was used as intended, and the ball mount was properly mounted and connected to the trailer.  Considering the evidence in the light most favorable to plaintiffs for purposes of this motion, plaintiffs have grounds for seeking a *res ipsa loquitur* instruction.  As other courts have done, this court cautions plaintiffs against construing the court's finding at this juncture as an indication that the Court necessarily will reach the same conclusion at trial on the applicability of *res ips loquitur*.  See *Williams v. Emerson Electric Co.,* 909 F.Supp. 395 at 399; *Condiff v. R.D. Werner Co., Inc.*, 2003 WL 21977167 at *4 (E.D. La. 2003).  Although plaintiffs established facts sufficient to warrant an application of *res ipsa loquitur*, probing cross examination of plaintiffs' witnesses could change that outcome.  See *Williams,* 909 F.Supp. 395 at 399.

Plaintiffs state that they intend to request a *res ipsa loquitur* instruction, but they also offer the affidavit and the expert reports of Dr. Shelton to support their defective

---

[7] See ftnt. 3.

construction claim. Defendant challenges the reliability of Dr. Shelton's opinions, not his qualifications; therefore, the court will assume for purposes of this motion that Dr. Shelton's qualifications are not at issue. Defendant argues that Dr. Shelton's opinions are based on unreliable methodology and, therefore, inadmissible under Federal Rule of Civil Procedure 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

> Rule 702 governs the use of expert testimony and provides as follows:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The trial court is charged with the responsibility of acting as a gatekeeper to exclude unreliable expert testimony, and it must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* Id., at 592-593.

Dr. Shelton's expert affidavit is based on personal knowledge, and his inspection of the truck, hitch/receiver (ball mount), and trailer included visual inspection and photographic and basic dimensional documentation (rec. doc. 26-2 and 26-4). His analysis of the ball mount included metallography, hardness testing, scanning electron microscopy, and energy dispersive spectroscopy in conjunction with the scanning electron microscopy (rec. doc. 26-2). Dr. Shelton also purchased three exemplar ball mounts and performed hardness testing and Charpy impact testing on the exemplars (rec. doc. 26-3). Dr. Shelton compared the

test results from the exemplars to those of the ball mount at issue and concluded that the ball mount at issue "has material characteristics which resulted in it failing in a brittle manner under ambient temperature conditions" (rec. doc. 26-4). Dr. Shelton further stated that the SAE J684 industry standard[8] establishes performance criteria and does not establish or specify criteria for the composition, strength, or toughness of steel from which the ball mount was fabricated. Id.

Defendant retained two experts - Dr. Michelle M. Volger, who performed tests on the ball mount at issue and exemplar ball mounts, and Dr. Swanger, who inspected the ball mount at issue and reviewed the testing methodology and results of both Dr. Shelton and Dr. Vogler. In support of its motion to strike Dr. Shelton's testimony, defendant offers only the affidavit of Dr. Swanger. Dr. Swanger concludes that "because the ball mount would have passed the SAE J684 test, and because it complied with its product design specifications, there is no evidence of a defect in the subject ball mount" (rec. doc. 31-3). Dr. Swanger's affidavit attacks the testing methodology used by Dr. Shelton, including the applicability of the SAE J684 and the results of the Charpy impact tests. Dr. Swanger concludes that Dr. Shelton's opinions are unreliable due to the methodology used to test and compare exemplar ball mounts (rec. doc. 31-3).

The disagreement between the experts in this case is over the proper testing methodology, the applicability of the SAE J684 standard, and whether compliance with

---

[8] The SAE J684 test is a tensile test developed by the Society of Automotive Engineers which establishes criteria regarding the loads to which Class III ball mounts could be subjected without failure (rec. doc. 20-2, Exhibit 3).

SAE J684 absolves defendant from liability.[9]  The court first notes that compliance with SAE J684 standard, while relevant for consideration, is not determinative of liability. See *Dunne v. Wal-Mart Stores, Inc.*, 679 So.2d 1034 (La. App. 1st Cir. 1996).  Additionally, the only evidence defendant offers to support its position is the self-serving affidavit of its expert.  Defendant does not cite to engineering texts or articles to show the "proper" testing methodology and standards for each test, nor does it cite to case law supporting its interpretation of the "proper" testing methodology.  The court cannot accept Dr. Swanger's unsupported opinion as to the "proper" testing methodology merely because he says it is so.  Defendant has simply failed to offer evidence to show that Dr. Shelton's testing methodology is unreliable.

Furthermore, both experts in this case, Dr. Shelton and Dr. Vogler, performed tests on the ball mount and exemplar ball mounts.  The issue of which expert, Dr. Shelton or Dr. Vogler/ Dr. Swanger, is more credible based on the specific tests performed by each expert is an issue for the jury.  See *Grenada Steel Industries, Inc. v. Alabama Oxygen Co., Inc.*, 695 F.2d 883, 888 (5th Cir. 1983)([I]t was for the jury to decide which of the experts was more credible, which used the more reliable data, and whose opinion-if any-the jury would accept).  The court gives proper deference to the jury's role as the arbiter of disputes between conflicting expert opinions.  Thus, based on the evidence offered by defendant, it is recommended that its motion to strike documents reflecting opinions of Dr. Shelton be denied.

---

[9] Dr. Shelton argues that the SAE J684 is not applicable due to the dynamic loading conditions in this case and because it does not specify the criteria for the composition, strength, and toughness of the ball mount (rec. doc. 34).

Because it has been established a *res ipsa loquitur* instruction is applicable in a LPLA case such as the one before the court and because there are issue of fact regarding the credibility of the proffered experts, summary judgment on the defective construction/composition claim is inappropriate at this time.

With respect to plaintiffs' inadequate warning claim under La. R.S. 9:2800.57, plaintiffs contend that if safety chains or a specific strength of safety chain was crucial for use in connection with the ball mount, defendant should have included a warning regarding the use of safety chains on the ball mount (rec. doc. 26). Plaintiffs attach copies of the decals and instructions on the exemplar ball mounts, which do not include a warning on the use of safety chains in connection with the ball mount (rec. doc. 26, Exhibit G). Defendant does not respond to the argument or the evidence offered by plaintiffs. Thus, plaintiffs have presented sufficient evidence to create an issue of fact with regard to whether the ball mount failed to contain an adequate warning on the use of safety chains.

**Conclusion**

Although plaintiffs' complaint alleges defective construction/composition, design, and inadequate warning, they failed to produce countervailing evidence on their defective design claim in opposition to the motion for summary judgment. Thus, the motion for summary judgment on plaintiffs' defective design should be granted. Numerous issues of fact surrounding whether the ball mount was used in a "reasonably anticipated use" and whether the ball mount was "unreasonably dangerous in construction or composition" or "unreasonably dangerous because of inadequate warning" preclude summary judgment on the defective construction/composition claim under La.R.S. 9:2800.55 and inadequate warning claim under La.R.S. 9:2800.57. Accordingly,

**IT IS RECOMMENDED** that defendant's motion for summary judgment (rec. doc. 20) should be **DENIED** on plaintiffs' defective construction or composition claim under La. R.S. 9:2800.55 and on plaintiffs' inadequate warning claim under La. R.S. 9:2800.57 and should be **GRANTED** on plaintiffs' defective design claim under La. R.S. 9:2800.56.

**IT IS FURTHER ORDERED** that defendant's motion to strike documents reflecting opinions of Dr. Shelton (rec. doc. 31) should be **DENIED**.

Signed in Baton Rouge, Louisiana, on March 26, 2009.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DENVER CROTWELL AND SHARON CROTWELL** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 06-909-RET-DLD** |
| **WAL-MART LOUISIANA, LLC, ET AL** | |

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on March 26, 2009.

*(signature)*

**MAGISTRATE JUDGE DOCIA L. DALBY**